AO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

SOUTHERN  DISTRICT OF  WEST VIRGINIA

| UNITED STATES OF AMERICA<br>V.<br>AARON WILLIAMS<br>BERNARD MARTIN | **CRIMINAL COMPLAINT**<br><br>Case Number: 2:08-mj-00098 |
|---|---|

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __October 8, 2008__ in __Kanawha__ County, in the __Southern__ District of __West Virginia__ defendant(s) did,
(Track Statutory Language of Offense)

knowingly and intentionally possess with intent to distribute a quantity of oxycodone, also known as "OxyContin," a Schedule II controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__.

I further state that I am a(n) __Special Agent, DEA__ and that this complaint is based on the following facts:
                                Official Title

See attached Affidavit

Continued on the attached sheet and made a part of this complaint:   X Yes   ☐ No

_SA W~ R_
Signature of Complainant

_SA Ween Ray_
Printed Name of Complainant

Sworn to before me and signed in my presence,

October 9, 2008                                           at   Charleston, West Virginia
Date                                                              City and State

MARY E. STANLEY, U.S. Magistrate Judge              _Mary E. Stanley_
Name and Title of Judge                                       Signature of Judge

# A F F I D A V I T

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, Wren C. Ray, Special Agent, Drug Enforcement Administration, being first duly sworn, do hereby depose and state as follows:

1. On October 8, 2008, I received information that a confidential source, who was truthful and reliable in the past and is hereafter referred to as CS, could purchase 100 OxyContin 80 mg tablets from Aaron WILLIAMS. The CS also stated that WILLIAMS lived in Charleston, WV but was headed to Beckley on this date and would deliver the OxyContin tablets to the CS for approximately $5,350.

2. At approximately 2:30 pm, the CS stated that WILLIAMS called the CS to say that he would be leaving Charleston in about twenty minutes and heading to Beckley, WV to deliver the OxyContin tablets.

3. At approximately 3:00 pm, Task Force Officer Chris Powell observed a black male fitting WILLIAMS' description and wearing a dark colored jacket, exit the apartment building at 109 Hunt Avenue, Charleston, WV where WILLIAMS resided in Apartment 4. WILLIAMS then got into a white Saturn Aura bearing New Jersey registration WBN 12A. TFO Powell followed the vehicle toward downtown Charleston before losing sight of the car in traffic.

4. The CS subsequently received phone call from WILLIAMS' phone number where an unknown male told the CS that if the unknown

male, later identified as Bernard MARTIN, has to drive to Beckley, then he expected the CS to purchase all the pills for $7,000. The CS agreed and was told that WILLIAMS and MARTIN would be leaving Charleston in approximately twenty minutes and would call the CS when they reached Harper Road in Beckley, WV.

5.  I informed West Virginia State Police that WILLIAMS would possibly be traveling with another male in the above-mentioned vehicle from Charleston to Beckley on this date and transporting approximately 100 OxyContin 80 mg tablets.

6.  At approximately 4:32 pm, WVSP Sgt. T.D. Landis informed me that WVSP Cpl. J. Jackson had stopped WILLIAMS in the Saturn Aura for speeding on I-64 east just before the Chelyan exit. Bernard MARTIN was the passenger in said vehicle. During the stop, Cpl. Jackson observed WILLIAMS quickly light a cigar upon his approach. Cpl. Jackson noted that subjects using marijuana often use cigars to mask the scent of the marijuana. During subsequent questioning, WVSP troopers learned that the vehicle was rented by MARTIN and that WILLIAMS was not a permitted driver. WILLIAMS stated that police needed to ask MARTIN if they could search the vehicle. WILLIAMS was asked to exit the vehicle and submitted to a _Terry_ frisk where a small amount of suspected marijuana was found. MARTIN was then asked for consent to search the vehicle which he denied. MARTIN was also asked to exit the vehicle and both subjects were asked to step back to Cpl. Jackson's marked cruiser. At this time, Sgt. Landis utilized her K-9 unit to walk

2

around the vehicle. The K-9 unit gave a positive indication for narcotics when walking around the vehicle. Both WILLIAMS and MARTIN were secured for officer safety while a search was conducted on the Saturn Aura. The search resulted in the discovery of several bottles and bags of hydrocodone tablets and approximately 100 OxyContin 80 mg tablets. Also recovered were three small baggies of marijuana packaged for street level sales.

7. MARTIN and WILLIAMS were informed that they were under arrest and transported to the WVSP station near the Marmet exit. Upon arrival, MARTIN told Cpl. Jackson that he wished to be separated from WILLIAMS and wanted to talk to police. SA Ray subsequently Mirandized MARTIN and WILLIAMS. Both were interviewed separately and admitted that they were traveling to Beckley to sell the OxyContin 80 mg tablets and all the other prescription drugs.

Further your affiant sayeth naught.

WREN C. RAY
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence, this 9th day of October 2008.

MARY E. STANLEY
United States Magistrate Judge

3